**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CREATION SUPPLY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19 C 6063 |
| | ) | |
| DAVID G. HAHN, an individual, and | ) | Judge Rebecca R. Pallmeyer |
| DREW L. BLOCK, an individual, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | ) | |
| CREATION SUPPLY, INC., | ) | |
| | ) | |
| v. | ) | No. 21 C 529 |
| | ) | |
| GEORGE CHERRIE, an individual, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

For almost a decade, Plaintiff Creation Supply, Inc. ("CSI") has litigated its insurer's refusal to provide a defense to CSI in a trade dress infringement case. CSI prevailed in the original state court declaratory judgment action, winning an award of nearly $195,000 from its insurer, Selective Insurance Company of the Southeast ("Selective"). Outraged by Selective's alleged bad-faith failure to tender a timely defense, CSI then sought additional recovery from Selective in federal court, but the Seventh Circuit concluded that CSI is not entitled to extracontractual damages under an Illinois state statute, and Judge Kocoras of this court declined to award any additional contractual damages.

CSI has not given up its effort to seek recovery beyond what the state court has awarded. In the first of two cases pending before this court, CSI sued Selective's attorneys: Defendants

Drew Block (Selective's outside counsel) and David Hahn (in-house counsel).[1]  This court dismissed CSI's original complaint for failure to state a claim.  CSI has now amended that complaint, still seeking recovery against Hahn and Block for the denial of insurance coverage.  In yet another lawsuit, CSI asserts nearly identical allegations against Defendant George Cherrie (Hahn's supervisor).  The court here expresses no views on CSI's claims that it is entitled to recover additional amounts for Selective's alleged wrongdoing.  The court does conclude, however, that CSI is not entitled to recover such damages from Selective's agents.  Accordingly, both complaints are dismissed, and the cases are dismissed with prejudice.

### BACKGROUND

The following procedural and factual account is based on the allegations in the First Amended Complaint against Hahn and Block ([44], hereinafter "FAC"), and the Complaint in CSI's recent suit against Cherrie ([1], hereinafter "CC").[2]

### I.  Procedural Background

Before turning to Plaintiff CSI's substantive allegations, the court offers an overview of the complicated procedural posture of these cases.

---

[1]  CSI filed its lawsuit in state court.  Block and Hahn then removed to this court on the basis of diversity jurisdiction, *see* 28 U.S.C. § 1332.  (Notice of Removal [1] ¶ 6.)  CSI is incorporated in Illinois and has its principal place of business here.  Hahn and Block are citizens and residents of New Jersey and Michigan, respectively.  CSI seeks more than $75,000 in damages.  (*Id.* ¶¶ 2–4.)  The court also has jurisdiction over CSI's lawsuit against Cherrie (described below) based on diversity:  Cherrie is a citizen and resident of Pennsylvania and the alleged amount in controversy exceeds $75,000.  (CC ¶¶ 1–4.)  Though Selective is not a party to the pending lawsuits, the court notes that it is incorporated in Indiana and has its principal place of business in North Carolina.  ([1] in 14 C 8856, ¶ 3.)

[2]  The FAC, exhibits to FAC, and any briefs related specifically to Defendants Hahn and Block are docketed in Case No. 19 C 6063.  The CC, exhibits to CC, and any briefs related specifically to Defendant Cherrie are docketed in Case No. 21 C 529.  At this stage of the proceedings, the court considers only "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."  *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).  Court filings not subject to reasonable dispute may be judicially noticed.  *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).

The insurance coverage dispute at the heart of this litigation arose in 2012, when Plaintiff CSI was sued in federal court in Oregon for trade dress infringement ("Oregon action"),[3] and tendered defense of that action to its commercial liability insurer, Selective.  (*See* FAC ¶¶ 10–12; CC ¶¶ 7–9.)  In June 2012, Selective denied the request.   (FAC ¶¶ 13–14, 111; CC ¶¶ 10–11.)  This denial spurred several lawsuits.

### A.    Illinois Action

First, in July 2012, shortly after denying coverage, Selective filed a lawsuit in the Circuit Court of Cook County, Illinois ("Illinois action"), seeking a declaration that it did not have a duty to defend CSI in the Oregon action.  (FAC ¶ 17; CC ¶ 14.)  *See Selective Ins. Co. of the Southeast. v. Creation Supply, Inc.*, 12 CH 24438.  CSI counterclaimed, seeking a declaration that Selective did have such a duty (Count I) and alleging breach of contract (Count II) and violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155 (Count III).  (Ex. M to FAC [44-13] and CC [1-13]); *see Selective Ins. Co. of Se. v. Creation Supply, Inc.*, 2015 IL App (1st) 140152-U, ¶¶ 8, 10 (hereinafter "First Illinois Appeal").  That section "provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable."  *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 519, 675 N.E.2d 897, 900 (1996).

This litigation lasted several years and generated two appeals.  First, in December 2013, the Illinois court granted partial summary judgment in favor of CSI, finding that Selective was obligated to defend CSI in the Oregon action.  (First Illinois Appeal, 2015 IL App (1st) 140152-U ¶¶ 2, 17; FAC ¶ 31; CC ¶ 28.)  The Illinois Appellate Court affirmed in February 2015.  (First Illinois Appeal, 2015 IL App (1st) 140152-U ¶ 1; FAC ¶¶ 40–41; CC ¶¶ 37–38.)

---

[3]     *See Too Marker Prods., Inc. v. Creation Supply, Inc.*, No. 3:12 C 725-BR.  At some point, CSI realized it could not afford to continue the Oregon action unless Selective provided a defense.  (FAC ¶ 26; CC ¶ 23; *see* FAC ¶¶ 27–30; CC ¶¶ 24–27.)  In July 2013, CSI settled all claims with the underlying plaintiff for $0; as part of this settlement, CSI agreed to stop distributing the allegedly infringing product.  (Ex. H to FAC [44-8] and CC [1-8], at 3.)

Second, in June 2016, the state court entered judgment in the amount of about $392,000 on Count I of CSI's counterclaims (a claim for declaratory judgment); the court's order permitted CSI to voluntarily dismiss with leave to refile Count II of its counterclaims (a breach of contract claim), and "expressly reserved [CSI's rights] to maintain its action against Selective" in the specific federal lawsuit discussed below, "regarding claims of breach of contract and violation of Section 155."[4] ((Ex. II to FAC [44-35] and CC [1-35] (hereinafter "June 2016 Order") at 2–3.) In June 2017, the Illinois Appellate Court affirmed the determination that Selective's duty to defend required it to pay the cost for CSI's defense, but reduced the time period for which CSI was entitled to an award of attorneys' fees incurred in that defense, concluding that this period ended when CSI settled with the underlying plaintiff in the Oregon action. (Ex. KK to FAC [44-37] and CC [1-37]); *see Selective Ins. Co. of the Se. v. Creation Supply, Inc.*, 2017 IL App (1st) 161899-U, ¶¶ 56–61 (hereinafter "Second Illinois Appeal"). In October 2017, the Illinois court entered final judgment; pursuant to the appellate court's decision, it awarded CSI about $195,000.[5] (Ex. OO to FAC [44-41] and Ex. PP to CC [1-42] (hereinafter "October 2017 Order").)

---

[4]     The court's understanding of the Illinois state court litigation is limited. The Illinois trial court's December 2013 summary judgment order does not include the court's reasoning (*see* Ex. I to FAC [44-9] and [1-9]), so the above description comes from CSI's allegations and the opinion in the First Illinois Appeal. Additionally, the parties have not provided a copy of CSI's counterclaims, and the June 2016 Order adjudicating those counterclaims only lists "Count I" and "Count II." The court has gleaned information about the substance of the counterclaims from the First Illinois Appeal opinion as well. *See* First Illinois Appeal, 2015 IL App (1st) 140152-U, ¶¶ 8, 10.

[5]     The October 2017 Order is sparse, but the court assumes that this award (like the June 2016 award) was on the declaratory judgment count and represents CSI's defense costs in the Oregon action. As discussed later in this opinion, the Seventh Circuit characterized this award as "compensatory damages" for Selective's breach of the insurance contract. *Creation Supply, Inc. v. Selective Ins. Co. of the Se.*, 995 F.3d 576, 581 (7th Cir. 2021). CSI's other requested relief—namely, reimbursement for its costs in the Illinois declaratory judgment action and in another lawsuit related to the underlying Oregon infringement action—sought "consequential damages." *Id.* In this lawsuit, CSI seeks "all available damages, including, but not limited to, consequential and punitive damages." (*See* FAC at 26.) These requested damages are identical to what CSI requested in the federal action against Selective. (Block MTD [60] at 3.)

4

### B.    Federal Action Against Selective

In November 2014, as the Illinois litigation was pending, CSI sued Selective in this district (hereinafter "federal action") for breach of contract and for violating Section 155.  (FAC ¶ 32; CC ¶ 29); *see Creation Supply, Inc. v. Selective Ins. Co. of the Se.*, No. 14 C 8856.  CSI initially succeeded in that case, which was assigned to Judge Kocoras of this court:  in 2017, Judge Kocoras granted partial summary judgment in favor of CSI, finding that Selective had breached its insurance contract with CSI, but leaving the issue of contractual damages for a later trial. ([146] in 14 C 8856.).  In 2018, Judge Kocoras held a bench trial on CSI's Section 155 claim; he found that Selective's refusal to defend CSI in the Oregon action was vexatious and unreasonable, and awarded CSI more than $2.8 million for Selective's violation of Section 155.  ([259, 260, 320] in 14 C 8856.)  In January 2019, Selective appealed Judge Kocoras's Section 155 ruling.  ([262] in 14 C 8856.)

### C.    Lawsuits Against Selective's Agents

While the appeal was pending—and recognizing the possibility that Judge Kocoras's Section 155 award could be overturned—CSI decided to look in another direction to recover its claimed losses.  In September 2019 (now seven years after the underlying insurance dispute with Selective arose), CSI filed suit against Selective's lawyers: David Hahn (in-house counsel) and Drew Block (outside counsel).  ([1-1] in 19 C 6063, hereinafter "OC").  In its original complaint, CSI alleged tort claims of intentional interference with the insurance contract, civil conspiracy, and (against Block) aiding and abetting.  (OC ¶¶ 105–120.)  In support of these claims, CSI made factual allegations describing Hahn's and Block's roles in the underlying coverage dispute with Selective—namely, their part in denying CSI's claim, withholding money under the insurance contract, and instituting and prolonging the Illinois declaratory judgment action.[6]  (*Id.* ¶¶ 9–104.)

---

[6]    A further note about the procedural posture, in which CSI's case against Selective and its case against Selective's agents proceeded before different judges in this district.  Local Rule 40.4 permits a case to be reassigned to another judge if (among other things) "it is found to be related to an earlier numbered case assigned to that judge."  L.R. 40.4(b).  The motion to

This court dismissed the original complaint against Hahn and Block based on Illinois's conditional privilege against tortious interference. *See Creation Supply, Inc. v. Hahn*, No. 19 C 6063, 2020 WL 4815905 (N.D. Ill. Aug. 19, 2020). Under this conditional privilege, a company's agents "generally cannot be liable in tort when they interfere with the company's contracts for the benefit of the company." *Nation v. Am. Cap., Ltd.*, 682 F.3d 648, 652 (7th Cir. 2012). The conditional privilege does not extend to unjustified or malicious conduct. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 156, 545 N.E.2d 672, 677 (1989). But to establish unjustified conduct, the court explained, CSI needed to allege a basis for concluding that Block and Hahn "acted solely for their own gain, solely for the purpose of harming Plaintiff, or contrary to Selective's interests." *Hahn*, 2020 WL 4815905, at *6; *accord Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018). Because the original complaint demonstrated that Defendants acted on behalf of and to further Selective's interests, the conditional privilege shielded their conduct.

In September 2020, CSI filed an amended complaint against Hahn and Block, again alleging tortious interference claims. (FAC ¶¶ 172–87.) Several months later, in January 2021, CSI filed a substantively identical complaint against another of Selective's agents: CSI brought claims of intentional interference and civil conspiracy against George Cherrie, who was Hahn's supervisor from March 2014 to September 2015 (there are no other allegations about Cherrie's role at Selective).[7] (CC ¶ 46.) This court stayed proceedings pending appeal of Judge Kocoras's

---

reassign "shall be filed in the lowest-numbered case," *id.* 40(c)—here, Judge Kocoras's case. Before ruling on any dispositive motions, this court noted that CSI's claims against Block and Hahn appeared "substantially related" to the federal action against Selective. ([23] in 19 C 6063.) Thus prompted, CSI filed a motion before Judge Kocoras to reassign the case as related. Judge Kocoras denied that motion, noting that at the time, the case before him was set for a damages trial within three weeks, while the case against Block and Hahn was only at the motion to dismiss stage. ([354] in 14 C 8856.) The court acknowledges that "[t]he judiciary has an interest . . . in avoiding messy, duplicative litigation." *Ewing v. Carrier*, No. 21-2890, 2022 WL 1656181, ___ F.4th ___, at *1 (7th Cir. May 25, 2022). Accordingly, because Judge Kocoras had declined to take this case, this court later stayed proceedings pending the Seventh Circuit appeal, as described below. ([48, 56] in 19 C 6063.)

[7]     This court granted CSI's motion to reassign its suit against Cherrie as a related case. ([53] in 19 C 6063.)

Section 155 ruling and $2.8 million award against Selective.  The court noted that CSI's amended complaint "seeks recovery against these Defendants for the same losses, occasioned by the same wrongdoing, for which Judge Kocoras found Selective . . . liable."  ([48, 56] in 19 C 6063.)  CSI effectively acknowledges that the lawsuits against Selective's agents were filed as a precaution, in case the Seventh Circuit reversed Judge Kocoras's decision.  (*See* FAC ¶ 167; CC ¶ 173 (alleging that Selective "decided to pursue defenses unique to it" in the federal action, "thereby forcing CSI to sue Hahn and Block for securing itself a full recovery in the event that Selective should prevail with its defenses").)

### D.     Appeal of the Federal Action Against Selective

CSI's fears proved prescient.  Although the language of Section 155 appears to address circumstances such as those found by Judge Kocoras, the Seventh Circuit reversed the award.  *See Creation Supply, Inc. v. Selective Ins. Co. of the Se.*, 995 F.3d 576 (7th Cir. 2021).  Relying on Illinois precedent, the Seventh Circuit interpreted the statutory text to permit a Section 155 claim only "where one of three issues remains undecided: [1] the liability of the insurer, [2] the amount owed under the policy, or [3] whether a delay in settling a claim has been unreasonable."  *Id.* at 579 (quoting *Neiman v. Econ. Preferred Ins. Co.*, 357 Ill. App. 3d 786, 794, 829 N.E.2d 907, 914 (1st Dist. 2005)).  According to the Seventh Circuit, all three threshold issues had been decided against Selective, meaning (somewhat counterintuitively) that the extracontractual remedy contemplated by Section 155 was not available to CSI.  *See id.* at 579– 82.

In discussing the amount owed, the Seventh Circuit noted that, on appeal from the Illinois trial court's fee award, the Illinois Appellate Court concluded that "the only loss payable under the policy was the $195,000 that CSI spent in the Oregon action before reaching settlement."  *Id.* at 580.  Though CSI now seeks "consequential damages that . . . are the amount of loss payable *by virtue of the breach of contract* already found by [Judge Kocoras]," such damages are not "the same as the amount owed *under the policy*."  *Id.* (internal quotation marks omitted).  In other

words, the Seventh Circuit concluded that the Illinois court had already awarded "compensatory damages" (which the court "assume[d] means the amount of loss payable under the policy"), but had not awarded any consequential damages stemming from Selective's breach. *Id.* at 581 (internal citation marks omitted). The court remanded for resolution of the only remaining issue, contractual damages. *Id.* at 583.

After the Seventh Circuit's decision came down, the parties in the instant cases—CSI and Defendants Hahn, Block, and Cherrie—jointly requested that this court lift its stay. The parties sought to proceed in this litigation, despite acknowledging that Judge Kocoras had not yet set a damages trial in the federal action against Selective. ([57] in 19 C 6063.) The court granted the parties' request, and the parties proceeded to brief Defendants' motions to dismiss. ([58] in 19 C 6063.)

Shortly thereafter, Judge Kocoras dismissed CSI's federal action against Selective. On remand from the Seventh Circuit, Judge Kocoras determined that CSI was entitled to no more than the $195,000 already awarded by the Illinois court. *Creation Supply, Inc. v. Selective Ins. Co. of the Se.*, No. 14 C 8856, 2021 WL 5005797, at *4 (N.D. Ill. Oct. 28, 2021). He reasoned that either law of the case (from the Seventh Circuit's decision) or res judicata (from the Illinois court's fee award) barred CSI from relitigating its breach of contract claim. *Id.* Regarding res judicata, Judge Kocoras explained:

> CSI litigated its claim for compensatory damages for defense costs for over two years in the state courts, both at the trial and appellate levels. It was ultimately successful to the tune of approximately $200,000. That award was legally predicated on the same contract of insurance and for the same breach that is being litigated in this case. Although the damages now claimed may well differ from those awarded in state court, they could have been pursued there.

*Id.* Furthermore, Judge Kocoras stated, although the state court had reserved CSI's right to sue Selective for breach of contract in its June 2016 Order, that ruling had "fallen out of the case"—after having reserved that claim, the state court entered final judgment on it. *Id.* Specifically, Judge Kocoras interpreted the state court's October 2017 Order (which reduced the fee award,

pursuant to the Second Illinois Appeal) as adjudicating CSI's breach of contract claim. *See id.* (describing that order as "enter[ing] final judgment on CSI's compensatory damages for Selective's breach of the duty to defend under the contract").[8] CSI's appeal of this decision is currently pending. *See* No. 21-3172 (7th Cir.).

## II. Factual Allegations

With this background on CSI's and Selective's long litigation history, the court turns to CSI's complaints against Selective's agents. The amended complaint against Defendants Block and Hahn and the new complaint against Defendant Cherrie are largely identical, and repeat the basic factual matter from CSI's original complaint. As discussed, this court dismissed that complaint based on Illinois's conditional privilege, which shields a company's agents from tortious interference liability where they acted to benefit the company. *See Nation*, 682 F.3d at 652. Because CSI's original complaint against Hahn and Block did not plausibly allege that they acted solely for their own gain, solely to harm CSI, or against Selective's interests, this court concluded that the conditional privilege protected Defendants from liability. *Hahn*, 2020 WL 4815905, at *5.

In an apparent effort to respond to this conclusion, CSI has added some 60 allegations regarding Defendants' supposed personal interests. But despite offering new allegations, CSI has failed to add any significant factual matter. The court only briefly summarizes CSI's allegations of tortious interference (repeated from its original complaint and already described in the original dismissal opinion) and then details its new allegations.

---

[8]     Judge Kocoras also stated that in December 2013, the state court "granted summary judgment to CSI on its counterclaim Count II, alleging breach of contract." *Creation Supply*, 2021 WL 5005797, at *4. In its pending appeal, CSI argues that this statement was in error, as well as other statements in the opinion and Judge Kocoras's overall finding that the Illinois court adjudicated CSI's breach of contract claim; according to CSI, the state court only granted summary judgment on Count I of CSI's counterclaims, which sought a declaratory judgment. (*See* [14] in 21-3172, at 14–20.) As the court reads Judge Kocoras's opinion, however, he concluded that the breach of contract claim was decided because the state court found that Selective owed a duty to defend CSI under the insurance contract and then awarded fees for CSI's expenses in defending itself.

### A.    Denial of Insurance

As discussed, this litigation arises from an insurance dispute in 2012, when CSI was sued for infringement in the Oregon action and Selective denied CSI's request to tender defense of that action.  (*See* FAC ¶¶ 10–13; CC ¶¶ 7–10.)  Selective denied coverage in a letter signed by Hahn (its Complex Claims Counsel) on June 22, 2012.  (FAC ¶ 14, 111; CC ¶ 11.)  In that letter, Selective asserted that, for various reasons, the claims in the Oregon action were not within the scope of injuries covered by CSI's insurance policy.  (Ex. D to FAC [44-4] and CC [1-4] (hereinafter "Hahn Letter"), at 3.)  One of those reasons, according to the letter, is that CSI's policy has "an exclusion of coverage" for injuries "caused with knowledge that the act would violate the rights of another."  (*Id.*)  CSI requested reconsideration on July 5, but in another letter, issued on July 10, Block (Selective's outside counsel) stated that "Selective stands by its decision to deny coverage for the reasons outlined in the June 22, 2012 denial letter."  (Ex. G to FAC [44-7] and CC [1-7], at 2; *see* FAC ¶¶ 18–19, 150; CC ¶¶ 14–16.)

As it did in the original complaint, CSI alleges in the two pending complaints that this denial was wrongful.  To support this assertion, CSI again relies heavily on Judge Kocoras's findings of fact in the Section 155 bench trial against Selective.  (Ex. K to FAC [44-11] and CC [1-11] (hereinafter "Federal Findings"); *see also* [259] in 14 C 8856.)  Judge Kocoras had found that Hahn was "the de facto judge and jury on CSI's claim," provided reasons for denial of CSI's claim that were "false, irrelevant or specious," and was "[f]or whatever reason . . . hell bent to deny CSI coverage." (FAC ¶¶ 35–37; CC ¶¶ 32–34 (quoting Federal Findings at 4, 14, 12).)

In the pending complaints, CSI additionally highlights other findings from Judge Kocoras. Before denying coverage, Hahn conducted a Google search of the products litigated in the Oregon action.  (Federal Findings at 5; *see* FAC ¶ 20; CC ¶ 17.)  Based on this "personal investigation"—which was "in violation of the four corners rule"—Hahn believed "that [CSI's

10

president] and CSI were law violators."[9]  (FAC ¶ 38; CC ¶ 35.)  CSI alleges that Hahn "decided he could take the position that CSI was knowingly guilty of trade dress infringement," and thus denied coverage on the basis of an exclusion for knowing legal violations.  (FAC ¶ 20; CC ¶ 17.)  Hahn then emailed his superior a "legal opinion," recommending that Selective deny coverage because the Oregon complaint had alleged knowing infringement by CSI.  (FAC ¶ 21; CC ¶ 18; *see* Federal Findings at 5–6.)  According to Judge Kocoras, this was a "half-truth," because it omitted the complaint's allegations of gross negligence, which would trigger coverage.  (FAC ¶ 37, CC ¶ 34 (quoting Federal Findings at 12); *see* FAC ¶ 22; CC ¶ 19.)  CSI alleges that Hahn "intentionally misl[ed] Selective into denying CSI coverage" and that Block knew this denial was "wrong because it omitted pertinent facts."  (FAC ¶¶ 21–23; CC ¶¶ 18–20.)  Once again, CSI has provided no reason, beyond reducing Selective's coverage liability, that Hahn would conduct this personal investigation or recommend the denial of coverage.

## B.    Illinois Action and Withholding Payments

Next, CSI repeats its allegations that Defendants interfered with the insurance contract by instituting litigation and withholding payments.  On July 2, 2012—ten days after Hahn denied insurance coverage and several days before CSI requested and Block denied reconsideration—Selective (through its attorneys Hahn and Block) filed the previously-mentioned "Illinois action." This lawsuit sought a declaration that Selective had no duty to defend CSI in the Oregon action. (FAC ¶ 17; CC ¶ 14.)  In December 2013, the Illinois court held to the contrary, ruling that Selective did owe a duty to defend CSI.  (First Illinois Appeal, 2015 IL App (1st) 140152-U ¶¶ 2, 17; FAC ¶ 31; CC ¶ 28.)  It was Hahn and Block, CSI alleges, who directed that Selective appeal this ruling. (FAC ¶ 40; CC ¶ 37.)

In January and February of 2014, with this appeal pending, CSI sent Selective multiple invoices.  The invoices, totaling about $200,000, allegedly represented expenses CSI incurred in

---

[9]      CSI alleges that Judge Kocoras made this finding, but does not provide a citation to any court document, including the factual findings from the Section 155 bench trial.

defending itself in the Oregon action. Block and Hahn did not respond. (FAC ¶¶ 46–48; CC ¶¶ 43–45.) Instead, in March 2014, Block (with Hahn's participation) made a "lowball" settlement offer of $35,000, which CSI rejected. (FAC ¶¶ 49–52; CC ¶¶ 47–50.) In April, CSI moved to enforce the court's judgment (still on appeal) and for attorneys' fees. (*See* Ex. BB to FAC [44-28] and CC [1-28], at 1–2.) In addition to seeking court enforcement, CSI again made a direct request to Selective for the $200,000 in August. (FAC ¶¶ 54–55; CC ¶¶ 52–53.) Block responded that Selective would not pay, because the decision finding a duty to defend was on appeal and the Illinois court had not yet determined the amount owed. (FAC ¶ 55; CC ¶ 53.) Shortly thereafter, Selective (through Block) filed specific objections to portions of the invoices and refused CSI's request to pay the remaining portion, for the same reasons.[10] (FAC ¶¶ 56–59; CC ¶¶ 54–57.)

Meanwhile, with the $200,000 still unpaid, CSI initiated more litigation. As described earlier, in November 2014, CSI filed a federal action against Selective before Judge Kocoras, alleging breach of contract and a violation of Section 155. (FAC ¶ 32; CC ¶ 29.) A month later, in the Illinois action, CSI supplemented its motion for attorneys' fees (originally filed in April 2014). (Ex. BB to FAC [44-28] and CC [1-28].)

Also in December 2014, Defendant Cherrie (who had become Hahn's supervisor in March 2014) entered the picture. After Cherrie asked about the Illinois action, CSI alleges, Hahn informed him that the coverage issue was pending on appeal and that CSI had filed a Section 155 claim. (CC ¶¶ 68, 70.) In response, Cherrie sent Hahn an email on January 15, 2015; according to the complaint (the email is not included in the pleadings), Cherrie instructed Hahn "not to pay CSI its $145,000 in fees and expenses for the Oregon Action for which Hahn had

---

[10]        Around this time, in September 2014, Hahn made several contemporaneous notes about Selective's litigation strategy, which (as the court previously concluded) demonstrated that Defendants' conduct up to this point "was in fact intended to advance Selective's interests." *Hahn*, 2020 WL 4815905, at *6. Hahn stated that the Illinois court "has finally provided adequate guidance" to set the defense costs, but "hoped to negotiate [the defense costs at issue] down further." (FAC ¶¶ 60–62; CC ¶¶ 58–60.) Hahn also noted that "the decision not to defend CSI led to [CSI's] having to take an injunction, while saving Selective from paying defense costs or damages." (FAC ¶ 64; CC ¶ 62.)

previously been given expense authority to pay due to the pending appeal and in response to CSI bringing a Section 155 claim against Selective." *(Id.* ¶ 71.)  CSI alleges that Hahn inserted this January 15 email into CSI's claim file, so that "Hahn would not be found solely responsible for how CSI's claim was unreasonably and vexatiously handled," and that Block initially tried to prevent CSI from obtaining this email by redacting it.  (*Id.* ¶¶ 72–75.)  This event—Cherrie's direction to withhold payment in January 2015—is a new allegation, and is the primary accusation levied against Cherrie.

In February 2015, the Illinois Appellate Court affirmed that Selective owed a duty to defend CSI in the Oregon action.  (First Illinois Appeal, 2015 IL App (1st) 140152-U ¶ 1.)  Once this decision came down, in June 2015, the trial court granted CSI's motion for fees in part, and ordered that CSI prepare a revised calculation and that Selective tender that amount within fourteen days.  (Ex. EE to FAC [44-31] and CC [1-33] at 17.)  But, CSI alleges, "[n]othing was paid" pursuant to this order.  (FAC ¶¶ 70–73; CC ¶¶ 76–79.)  Then, in November 2015, Selective made a $178,000 payment on the invoices, allegedly at the insistence of David Richmond (Hahn's "former supervisor at Selective"), who learned that "Hahn and Block were wrongfully withholding payments from CSI."[11]  (FAC ¶¶ 75–81; CC ¶¶ 81–87.)

In June 2016, the state court entered judgment in favor of CSI in the amount of about $392,000, less the $178,000 already paid.  (June 2016 Order at 2.)  Selective appealed, again at Block's and Hahn's direction.  (FAC ¶ 43; CC ¶ 40.)  While this appeal was pending, Selective (through Block and Hahn) refused to pay CSI some $11,600 of the award—an amount that

---

[11]    CSI further alleges that Block and Hahn knew this $178,000 payment was less than what CSI was owed, and that Block requested some type of "release" from CSI before paying, allegedly because he knew that he and Hahn were liable for withholding payments owed to CSI.  (FAC ¶¶ 82–84; CC ¶¶ 88–90.)  As this court previously explained, "Selective's decision to compensate Plaintiff after [another employee allegedly insisted] does not establish that Defendants did not have Selective's interests at heart in refusing to do so earlier."  *Hahn*, 2020 WL 4815905, at *6.  And "without specifics concerning the terms or circumstances of the proposed release, the court is unable to conclude that [an inference that Block requested the release because he knew his actions were wrong] is reasonable."  *Id.*

Selective "never challenged at the trial court level" and therefore could not appeal. (FAC ¶ 86; CC ¶ 92.) In June 2017, the Illinois Appellate Court affirmed that Selective owed CSI its costs for defending itself, but reduced the fee amount. *See* Second Illinois Appeal, 2017 IL App (1st) 161899-U, ¶¶ 56–61. CSI alleges that Block and Hahn then "forc[ed]" CSI to file a motion with "detailed calculations," before finally agreeing to pay the amounts submitted. (FAC ¶ 96; CC ¶ 102.)

On October 2, 2017, the Illinois court entered final judgment, concluding that CSI was entitled to some $195,000, again offset by the amount already paid by Selective. (October 2017 Order.) Selective paid the remaining judgment amount at some point later. (*See* FAC ¶ 97; CC ¶ 103 (alleging that Hahn and Block "did not pay the full amount of CSI's fees and expenses . . . until almost two years after invoices were submitted").)

### C. New Allegations

Except where noted, the above allegations were all previously asserted in CSI's original complaint against Block and Hahn. Additionally, the original complaint made some cursory allegations about Defendants' supposed self-interests, in an attempt to evade the conditional privilege afforded to a company's agents acting to benefit the company.

The original complaint alleged that, in violation of a provision of Selective's Claims Manual meant to guard against conflicts of interest, Hahn was involved both in adjusting and litigating the same claim. Hahn, along with Block, therefore allegedly "had conflicts of interest in that they were defending their own actions" (OC ¶¶ 36, 95–96)—but as the court previously noted, the original complaint included "no supporting allegations [that] reasonably permit this conclusion." *Hahn*, No. 19 C 6063, 2020 WL 4815905, at *6. The court also rejected CSI's cursory assertion that Hahn and Block wanted to force CSI to "litigate for every penny" and attempted to "drive [CSI] into bankruptcy before it could collect anything." (OC ¶ 99.) This hard bargaining did not "plausibly suggest that Defendants were acting for the sole purpose of causing Plaintiff harm," especially as the original complaint "ha[d] not identified Defendants' motives for harming Plaintiff, or any

14

preexisting relationship with, or animus against Plaintiff before the insurance dispute." *Hahn*, 2020 WL 4815905, at *6. Rather, the original complaint showed "that the conduct Defendants allegedly undertook for personal gain was inextricably intertwined with their efforts to reduce Selective's coverage obligations," and was "at least equally consistent with the conclusion that Hahn made unintentional but serious errors in judgment while working toward Selective's goals." *Id.* CSI failed "to allege how Defendants' litigation strategy, including reducing what Selective owed and withholding payments to Plaintiff, would in fact have served Defendants' personal interests." *Id.*

In its pending complaints, CSI attempts to address the court's prior conclusion. CSI's general theory nevertheless continues to rest on Hahn's supposed conflict in defending his own actions—that is, his wrongful denial of the insurance claim—when representing Selective. CSI appears to argue that Hahn and the other Defendants were motivated by a desire to hide this original wrongful denial of insurance, rather than by a desire to reduce Selective's coverage liability. Additionally, CSI makes numerous allegations about Defendants' misconduct in the Illinois and federal action, apparently to establish that Defendants' conduct was in fact harmful to Selective.

### 1. Alleged Conflict of Interest

CSI's theory, in part, is that Defendants had conflicts of interest in defending Selective. Specifically, CSI alleges that Hahn "acted as Selective's and essentially as his own attorney in defending his own actions"; his "personal involvement with CSI's claim and [in] defending his own conduct in the resultant litigations with CSI made it impossible for Hahn to adequately represent the interests of Selective"; and Hahn "could not be impartial to his primary duty to Selective as its lawyer." (FAC ¶¶ 115, 138, 140.) Hahn was beholden to his "personal interests," which CSI identifies as "preserving his employment with Selective," and "defending his and Block's decisions to unjustifiably deny CSI's claims and file [the Illinois] suit on Selective's behalf." (*Id.* ¶ 139.) These personal interests allegedly ran counter to Selective's interest of "facilitating the quick and

efficient handling" of insurance claims. (*Id.*) The amended complaint also alleges, without further details, that Block's client was "essentially" Hahn, not Selective, "creating a conflict of interest between Block and Selective." (*Id.* ¶ 148.) CSI says nothing about Cherrie's alleged conflict.

CSI asserts that Hahn's and Cherrie's *modus operandi*—in which Block participated—was to drive CSI into bankruptcy through litigation; this was "fueled by their own conflicted self-interests." (FAC ¶¶ 107–08; CC ¶¶ 113–114.) According to CSI, Defendants knew that CSI was a "small company [that] would not be able to afford to challenge the denial of coverage," acted with "malice toward CSI . . . in an attempt to bankrupt CSI so it would not be able to challenge their actions," and withheld funds "in the hope of forcing CSI to capitulate and cease to pursue claims resulting from their actions." (FAC ¶¶ 152–57; CC ¶¶ 158–63.) In other words, CSI speculates that Defendants wanted to bankrupt CSI so that CSI would abandon its litigation against Selective, such that Selective would never learn about Defendants' wrongful actions (namely, the denial of insurance coverage and attendant decision to institute the Illinois declaratory judgment action).

### 2. Litigation Conduct

The amended complaint also adds allegations about Defendants' litigation conduct. Rather than offer specifics concerning alleged interference with CSI's contract or harm suffered by CSI, these allegations appear to be an effort to overcome Defendants' conditional privilege by showing that their conduct in the Illinois and federal actions was harmful to Selective.

In the Illinois action, Hahn and Block allegedly failed to refer discovery requests, deposition notices, and trial subpoenas to Selective's Corporate Claims Litigation Counsel, in violation of Selective's Claims Manual; instead, Hahn performed searches for documents and signed interrogatory responses on his own. (FAC ¶¶ 116–118.) CSI further alleges that Defendants "did not keep Selective management properly informed as to the status of CSI's claim or litigation against CSI," and failed to "adequately advise" Selective about their conflicts of interest. (FAC ¶¶ 109, 124–27; CC ¶¶ 115, 130–33.) Hahn and Block allegedly failed to attend

a settlement conference in the Oregon action. They did participate in mediation and settlement conferences in the Illinois action, but, CSI alleges, Hahn and Block "did not act in Selective's interests in connection with such settlement conferences," instead "scuttl[ing] settlement negotiations to continue to propagate the dispute with CSI to avoid having to inform Selective's management of the true nature and results of their actions." (FAC ¶¶ 128–30; CC ¶¶ 134–36.) Block and Hahn also failed to "fully" advise Selective of settlement offers; all of CSI's settlement attempts "failed because of Hahn and Block acting in their own self-interest" (CSI does not clarify what self-interest this was). (FAC ¶¶ 131–32; CC ¶¶ 137–38.)

For the federal action, CSI repeats all of the above litigation and settlement allegations. (*See supra.*) CSI further alleges that Hahn and Cherrie "appointed themselves as Selective's primary witnesses," at the federal bench trial on CSI's Section 155 claim; they "testified about matters that were contrary to Selective's interest as found in the Federal Action," and as a result, "le[ft] [Selective] exposed to potential further liability." (CC ¶¶ 128–29; *see* FAC ¶¶ 122–23.) Without citing findings or explaining the harm caused by Hahn's and Cherrie's trial testimony, CSI alleges that Defendants failed to "adequately inform" Selective about this testimony. (FAC ¶ 127; CC ¶ 133.) Additionally, after this Section 155 bench trial (which occurred in early July 2018), CSI extended another settlement offer to Selective "via Cherrie" (who it appears had not been involved in prior settlement offers). (CC ¶¶ 33, 168.) CSI alleges, on information and belief, that Hahn and Cherrie did not relay this offer to their supervisors.[12] (FAC ¶ 163; CC ¶ 169.)

CSI further claims that Hahn and Block violated the Rules of Professional Conduct (RPC) when representing Selective. Under RPC 3.7 of New Jersey (where Hahn is admitted to practice),

---

[12] CSI does not allege that these supervisors would have accepted CSI's settlement offer. Instead, CSI alleges that Hahn's and Cherrie's supervisors "would have responded since, pursuant to [Rules of Professional Conduct] 5.1(c)(2), Hahn's conduct would be imputed onto his supervisors . . . unless they took reasonable remedial action to mitigate the consequences of his actions." According to CSI, "[a] failure to respond cannot be considered reasonable remedial action unless Hahn's supervisors were not fully informed about the bench trial." (FAC ¶¶ 164–65; CC ¶¶ 170–71.) CSI offers no further explanation of this confusing argument.

a lawyer may not (with certain exceptions) act as an advocate at a trial where he is likely to be a "necessary witness." (FAC ¶¶ 119–21.) RPC 1.7 prohibits representation where the lawyer has a conflict of interest; a comment to the ABA Model Rule notes that detached advice may not be possible "if the probity of a lawyer's own conduct in a transaction is in serious question." (*Id.* ¶¶ 136–37.) Additionally, CSI alleges that under RPC 1.13, if Hahn knew that anyone was engaging in a legal violation that could be imputed to Selective, he was required to "proceed as is reasonably necessary in the best interest of the organization," which may include "referring the matter to a higher authority in the organization." According to CSI, Hahn's conduct could be imputed to Selective, and was in fact imputed to Selective in the Section 155 trial. Hahn should have—but did not—refer the dispute to an (unidentified) "higher authority." (*Id.* ¶¶ 141–46.) This, CSI asserts, "caused CSI's dispute and hindered its resolution contrary to Selective's interest." (*Id.* ¶ 147.) Block allegedly "knew, or should have known, that Hahn was pursuing his own interests as opposed to Selective's," and should have referred the matter to an (unidentified) "higher authority" at Selective under the RPC of Illinois (presumably where Block was admitted to practice). (*Id.* ¶¶ 149–150.)

### 3. Other Alleged Harm to Selective

Finally, CSI makes cursory general assertions that Defendants' conduct harmed Selective, again in an apparent attempt to overcome the conditional privilege. Defendants allegedly "act[ed] contrary to Selective's interests," "used Selective's funds to defend their actions [in the Illinois and federal action] contrary to Selective's interest," caused Selective not to fulfill its contractual obligations to CSI, and "decrease[d] Selective's shareholders' value" through their actions and litigation. (FAC ¶¶ 151, 158–61; CC ¶¶ 157,164–67.) CSI also claims that Defendants "engaged in unfair claims practices in violation of Illinois insurance codes and regulations," as shown in a lengthy chart that links various allegations in the complaint with regulations the Defendants allegedly violated. (FAC ¶ 171; CC ¶ 177.) This, too, CSI believes, establishes that despite their status as Selective's agents, the individual Defendants were in fact acting contrary to Selective's

18

interests and therefore may be held liable for tortiously interfering with Selective's contract with CSI.

## DISCUSSION

Defendants Hahn, Block, and Cherrie now move to dismiss CSI's complaints against them, arguing that (1) CSI's litigation against Selective precludes recovery in this case and (2) CSI failed to state a claim for tortious interference and its derivative torts based on various litigation privileges, primarily the conditional privilege.[13]  (*See* Hahn MTD [46]; Hahn Renewed MTD [61]; Block MTD [60]; Cherrie MTD [14].)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In ruling on a Rule 12(b)(6) motion, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018).  Dismissal on the basis of an affirmative defense is permitted on a Rule 12(b)(6) motion only where the availability of the defense "is apparent in the plaintiff's complaint itself."  *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020).

CSI's frustration about Selective's litigation posture is palpable; but the court concludes, as it did before, that CSI can recover, if at all, only against Selective.

---

[13]     Each Defendant adopts and incorporates the arguments raised by other Defendants, so the court does not distinguish between their arguments.  (Hahn Renewed MTD at 1; Block MTD at 4; Cherrie MTD at 10–11.)  Because the court's decision rests on other grounds, it does not address Defendants' arguments that Section 155 is the exclusive remedy for CSI's claims and that agents of Selective cannot conspire with one another.

I.      **Preclusion**

The court turns, first, to Defendants' contention that CSI's instant suit is barred under the law of preclusion.  Defendants argue that this lawsuit is barred by the "CSI/Selective Litigation" (Block MTD at 2 n.4), a reference to CSI's Section 155 and breach of contract suit against Selective before Judge Kocoras.  Though Defendants' briefing is less than clear, they appear to rely on three doctrines:  the rule against claim-splitting, collateral estoppel, and Illinois's prohibition on double recovery.  Significantly, Defendants' briefing focuses entirely on the federal action, and makes no preclusion-related arguments about the Illinois action.

This court applies Illinois law to determine the preclusive effect of prior Illinois judgments, *see Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1016 (7th Cir. 2014), and federal judgments rendered in a diversity case applying Illinois law.  *See H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020).  Illinois law prohibits "a plaintiff from suing for part of a claim in one action and then suing for the remainder in another action."  *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 340, 665 N.E.2d 1199, 1206 (1996).  In this situation, res judicata (assuming the doctrine's requirements are met) bars any claim that could have been brought in the original action.  *See Carr v. Tillery*, 591 F.3d 909, 913–14 (7th Cir. 2010) ("You cannot maintain a suit, arising from the same transaction or events underlying a previous suit, simply by a change of legal theory.  That is called 'claim splitting,' and is barred by the doctrine of res judicata.") (applying Illinois law).  Defendants bear the burden of establishing the affirmative defense of res judicata.  *See Walczak*, 739 F.3d at 1016 n.2.  This requires three showings: (1) a final judgment on the merits; (2) identity of cause of action; and (3) identity of parties or their privies.[14]  *Ward v. Decatur Mem'l Hosp.*, 2019 IL 123937, ¶ 45, 160 N.E.3d 1, 9.

---

[14]      Under federal law, the doctrine of claim-splitting—a "subset" of res judicata—does not require a final judgment.  *Scholz v. United States*, 18 F.4th 941, 951–52 (7th Cir. 2021).  Defendants have not argued that Illinois courts omit the finality requirement when applying the rule against claim-splitting (nor do they discuss finality at all).  The court is not aware of any Illinois caselaw suggesting this result.

This court has little difficulty with prongs (2) or (3) of the res judicata test. There is an obvious identity of cause of action between the federal action against Selective and this one against Selective's agents. CSI's only argument to the contrary—that the claims here are technically different than those asserted against Selective—is meritless. Under Illinois's transactional test, separate claims are considered the same cause of action for res judicata purposes "if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311, 703 N.E.2d 883, 893 (1998). CSI's claims in both lawsuits arise from the same core facts: Selective's denial (through its agents) of CSI's insurance claim.

With respect to (3)—the identity of parties or their privies—the court is satisfied that this element of the rest judicata test, too, is met. Privity exists "between parties who adequately represent the same legal interests." *Chi. Title Land Tr. Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1080 (7th Cir. 2011) (quoting *People ex rel. Burris v. Progressive Land Devs., Inc.*, 151 Ill. 2d 285, 296, 602 N.E.2d 820, 825 (1992)). Under Illinois law, agents are in privity with their principal for purposes of res judicata "if the prior action concerned a matter within the agency." *Atherton v. Connecticut Gen. Life Ins. Co.*, 2011 IL App (1st) 090727, ¶ 14, 955 N.E.2d 656, 660 (citation omitted); *see Chi. Title*, 664 F.3d 1080 (finding privity between a corporation and its officers).

The complaint makes clear that Defendants were agents of Selective when handling the underlying insurance claim and litigation, the subject of the federal action. The primary allegation against Cherrie—that he ordered Hahn not to pay CSI's monetary demand to Selective—inherently alleges that Cherrie acted on behalf of Selective. (*See* CC ¶ 71.) CSI also alleges that Cherrie testified as "Selective's primary witness" and was designated "Selective's corporate representative" at trial (*Id.* ¶ 128, 130), and that he acted on behalf of Selective in the litigation with CSI by "mak[ing]" or "forc[ing]" CSI to extensively litigate with Selective (*see id.* ¶¶ 113–14), failing to keep Selective management informed about the litigation (*id.* ¶¶ 115, 131–33), and

receiving a settlement offer on behalf of Selective (*id.* ¶ 168). Hahn (Selective's "Complex Claims Counsel" and "attorney") and Block (its "outside attorney") also acted as Selective's agents with respect to CSI's insurance claim and attendant litigation. (FAC ¶¶ 115, 121, 141, 150); *see Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) (bank and its attorneys were in privity); *see also Purmal v. Robert N. Wadington & Assocs.*, 354 Ill. App. 3d 715, 723, 820 N.E.2d 86, 95 (1st Dist. 2004) (the level of involvement in the first action was a factor in determining privity). CSI itself pleads that Hahn was Selective's agent, such that his conduct was "imputed" to Selective. (FAC ¶¶ 144–45); *see Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 459 (7th Cir. 2017) (plaintiff "pleaded himself out of court on the issue of privity" by seeking to hold defendants vicariously liable for the conduct of a party to the prior litigation). Most significantly, although CSI attempts to posit other motivations on the part of Defendants, the circumstances confirm that Defendants and Selective shared the same interest in the prior litigation: upholding the denial of CSI's claim against its insurer.

That leaves prong (1) of the res judicata test—whether there was a final judgment on the merits of CSI's claims in the federal action. Answering this question is complicated by the procedural posture. After reversing the judgment in favor of CSI on the Section 155 claim, the Seventh Circuit remanded the breach of contract claim, but Judge Kocoras has dismissed it, concluding that the Illinois action raised a res judicata bar. *See Creation Supply*, 2021 WL 5005797, at *4. He did so in spite of the fact that the state court had expressly reserved the claims then pending in federal court against Selective. This court notes that Illinois recognizes an exception to the prohibition on claim-splitting where "the court in the first action expressly reserved the plaintiff's right to maintain the second action." *Rein*, 172 Ill. 2d at 341, 665 N.E.2d at 1207. Judge Kocoras nevertheless evidently believed that the express reservation exception no longer applied; although the state court reserved the breach of contract claim in its June 2016 Order, he reasoned that the court later entered a final judgment on that claim in its October 2017

Order.  *See Creation Supply*, 2021 WL 5005797, at *4.  Judge Kocoras's ruling is currently on appeal.

In this posture, the court is reluctant to conclude, as a matter of law, that res judicata bars these suits.  Under Illinois law, "[a]n order is final if it either terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate branch thereof."  *Wilson v. Edward Hosp.*, 2012 IL 112898, ¶ 19, 981 N.E.2d 971, 978. At first blush, there appears to be a final judgment in the federal action:  Judge Kocoras terminated the Section 155 claim (a "separate branch" of the controversy) and dismissal of the breach of contract claim is pending on appeal.  But Section 155 "provides a remedy in a specified type of 'action' (case); it does not create a cause of action; it presupposes rather than authorizes a suit." *Hennessy Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 770 F.3d 676, 679 (7th Cir. 2014).  "If the court in which the specified type of action is brought finds that a party is causing a delay that is 'vexatious and unreasonable,' then it can levy a penalty specified in section 155—in the same action."  *Id.*  The parties have provided no guidance on whether dismissing a claim for a Section 155 remedy, without dismissing the underlying action, is final for res judicata purposes. *Cf. Wilson*, 2012 IL 112898, ¶¶ 24–26, 981 N.E.2d at 980–81 (holding that the court's grant of partial summary judgment on actual agency was not final for res judicata, because actual and apparent agency are not causes of action).  Though the contract claim was also dismissed, Illinois law is unclear on whether a trial court's order is final for res judicata purposes during the pendency of an appeal.  *See Legat v. Legat Architects, Inc.*, No. 20 C 6830, 2021 WL 2566771, at *2 (N.D. Ill. June 23, 2021); *see also Baek v. Clausen*, 886 F.3d 652, 664 (7th Cir. 2018).

Additionally, Defendants themselves did not rely on the Illinois declaratory judgment action in their preclusion arguments.  And the preclusive effect of this Illinois action is currently being litigated in the appeal of Judge Kocoras's ruling, with CSI arguing (among other things) that the Illinois court did not adjudicate its breach of contract claim and that a declaratory judgment action does not have preclusive effect on other claims.  (*See* [14] in No. 21-3172 (7th Cir.), at 24–28.)

Nor did the Court of Appeals address the matter of res judicata in its ruling remanding the federal case for a determination of CSI's contractual damages.

Because Defendants have not pointed to a final judgment on the merits, the court also rejects their other preclusion-related arguments at this time. Defendants contend that CSI is collaterally estopped from relitigating the issue of damages caused by Selective's contractual breach; but collateral estoppel (or issue preclusion) also requires a final judgment on the merits. *Schandelmeier-Bartels v. Chicago Park Dist.*, 2015 IL App (1st) 133356, ¶ 36, 26 N.E.3d 541, 551. The court is not satisfied that Defendants have made this threshold showing. *See Smith v. Chem. Pers. Search, Inc.*, 215 Ill. App. 3d 1078, 1082, 576 N.E.2d 340, 344 (1991) ("The party asserting the preclusion bears the heavy burden of showing with clarity and certainty that the identical issue was decided in the prior case.").

Defendants also note (without a clear argument) that "the law in Illinois is clear that a plaintiff is not entitled to double recovery." *Sommese v. Am. Bank & Tr. Co., N.A.*, 2017 IL App (1st) 160530, ¶ 21, 87 N.E.3d 285, 291. Usually, that principle entitles defendants "to a reduction in damages—sometimes called a 'setoff'—to offset any amounts that the plaintiff already has collected from other sources in compensation for the same injury." *Illinois Sch. Dist. Agency v. Pac. Ins. Co.*, 571 F.3d 611, 615–16 (7th Cir. 2009). But CSI did not receive any compensation in the federal action: the Seventh Circuit rejected its Section 155 claim and Judge Kocoras dismissed its contract claim, determining that CSI was entitled to no more than the $195,000 awarded by the Illinois court. That $195,000 award on CSI's declaratory judgment counterclaim for defense costs in the Oregon action represents compensatory damages for Selective's breach of contract. But this court cannot conclude, from the pleadings alone, that this award fully compensated CSI's alleged injury. Under the make-whole principle of compensatory damages, "[t]he law aims to put an injured plaintiff in the same financial position that it would have been in if the defendant had not breached its duty." *Id.* at 617. CSI could argue that, had Selective performed its contractual duty (providing a defense in the Oregon action), then CSI would not

24

have incurred at least some of the costs in the Illinois declaratory judgment action—costs that CSI now seeks. *See id.* at 616–17 (where plaintiff received defense costs in a lawsuit, double recovery did not necessarily prohibit recovery of costs incurred in prosecuting that suit). This conclusion is bolstered by the Seventh Circuit's suggestion in the federal action—that even if the $195,000 award constitutes all of CSI's "compensatory damages" for "the amount of loss payable under the policy," "consequential damages" could still be available for Selective's breach. *Creation Supply*, 995 F.3d at 581; *see id.* ("[C]onsequential damages may be recovered after an insurance contract is breached.") (citing *Clark v. Standard Life & Acc. Ins. Co.*, 68 Ill. App. 3d 977, 986, 386 N.E.2d 890, 898 (1st Dist. 1979)). Defendants have not briefed whether CSI is entitled to consequential damages. Dismissal based on Illinois's rule against double recovery is not appropriate at this stage.[15]

CSI has sought damages for wrongs alleged here in multiple lawsuits and against multiple individuals, but the court concludes that Defendants' preclusion-related arguments are nevertheless premature. As explained below, however, CSI's claims against these Defendants fail for other reasons.

## II. Tortious Interference

CSI contends that the individual Defendants are liable for tortious interference with CSI's insurance contract with Selective. Under Illinois law, a claim of tortious interference requires: "(1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages." *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018). But, as mentioned, Illinois recognizes a conditional privilege "where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the

---

[15] Because the pleadings do not make clear whether CSI was fully compensated for its alleged contractual injury, the court need not consider whether its request for punitive damages would overcome the rule against double recovery.

plaintiff's contractual rights." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 157, 545 N.E.2d 672, 677 (1989).

One such interest exists where corporate officers exercise their business judgment, "because a corporation acts through its agents, and the duty that those agents owe to the corporation's shareholders outweighs their duty to the corporation's contract creditors." *TABFG, LLC v. Pfeil*, 746 F.3d 820, 825 (7th Cir. 2014). Thus, "corporate officers may interfere with a contract where they use business judgment to act on behalf of their corporation." *Webb*, 906 F.3d at 577; *see also Nation v. Am. Cap., Ltd.*, 682 F.3d 648, 652 (7th Cir. 2012) (corporate officers "generally cannot be liable in tort when they interfere with the company's contracts for the benefit of the company"). This privilege is conditional, meaning it does not extend to conduct that is "unjustified or malicious." *HPI Health Care*, 131 Ill. 2d at 156, 545 N.E.2d at 677. Because malicious simply means that the interference was "intentional and without justification," the dispositive question is whether defendants' conduct was unjustified.[16] *Id.* 131 Ill. 2d at 157, 545 N.E.2d at 677. Conduct is unjustified if "the reason a corporate officer interfered with a contract was either to further his personal goals or to injure a party to the contract, *and* his actions were not in the best interests of the corporation." *Webb*, 906 F.3d at 577.

Previously, this court concluded that CSI did not state a claim for tortious interference, because the original complaint against Block and Hahn did not permit "a reasonable inference that Defendants acted solely for their own gain, solely for the purpose of harming Plaintiff, or contrary to Selective's interests." *Hahn*, 2020 WL 4815905, at *6. CSI attempts to overcome that

---

[16]  "Illinois courts have been unclear about whether the issue of conditional privilege is part of the plaintiff's claim—that is, an aspect of the plaintiff's burden to prove that the defendant's interference with his contract was unjustified—or an affirmative defense to be proved by the defendant." *Nation*, 682 F.3d at 652 n.2. The court need not resolve this uncertainty, because CSI loses in either case:  either CSI has not shown that Defendants' conduct was unjustified, or Defendants' affirmative defense is apparent from the face of the complaints. *See id.*; *see also Burton*, 961 F.3d at 965 (dismissal based on an affirmative defense is appropriate on a motion to dismiss where the defense's availability is "apparent in the plaintiff's complaint itself").

conclusion by (1) arguing that the conditional privilege does not apply as a threshold matter and (2) pointing to its new allegations about Defendants' supposed personal interests. Once again, the court concludes that CSI's factual allegations confirm that, to the extent Defendants interfered with the insurance contract, their conduct was on behalf of and to benefit Selective.

### A. Conditional Privilege Application

In its prior briefing, CSI conceded that "Hahn, as Selective's employee, and Block, as Selective's outside counsel, acted as Selective's agents, such that the conditional privilege applies." *Hahn*, 2020 WL 4815905, at \*5. Now, however, CSI argues for the first time that Hahn and Cherrie are not employed by Selective and therefore cannot invoke the conditional privilege.[17]

This argument is inconsistent with the record and meritless. The most well-established interest that supports the conditional privilege stems from the business judgment rule and the defendant's responsibility for exercising that judgment on behalf of his company. *See Webb*, 906 F.3d at 577; *Nation*, 682 F.3d at 652. Though courts often discuss this interest in terms of corporate officers or employees, *see id.*, the Illinois Supreme Court has made clear that it also applies to a company's agents. *See HPI Health Care*, 131 Ill. 2d at 158, 545 N.E.2d at 678 (conditional privilege applies to hospital management companies because they "exerc[ise] business judgment on behalf of the company's hospital"); *see also Stonegate Ins. Co. v. Fletcher*

---

[17]    As "evidence" for this claim, CSI relies on Hahn's June 2012 letter denying coverage, in which Hahn states that he is "employed by Selective Insurance Company of America," which is handling the insurance claim "on behalf of issuing company Selective Insurance Company of the Southeast (Selective)." (Hahn Letter at 2.) CSI then points to what appears to be Selective's 2020 Annual Report (though several pages are corrupted and unreadable), attached to its response to Cherrie's and Hahn's motions to dismiss. (Ex. A to Pl.'s Resp. to Cherrie's MTD [15-1]; Ex. A to Pl.'s Resp. to Hahn's MTD [63-1].) CSI apparently contends that this exhibit shows that the above-referenced entities are separate subsidiaries of another Selective entity; the report does not identify Cherrie's or any other Defendant's employer. (*See id.* at 21 (noting that "Selective Insurance Group" is the parent company for "Insurance Subsidiaries").) So, as best this court can tell, CSI's argument is that—contrary to its complaint allegation that Selective was Hahn's "employer" (CC ¶ 116)—Hahn is not employed by Selective and therefore his supervisor Cherrie cannot be either. (*See* Pl.'s Resp. to Cherrie's MTD [15] at 2 (arguing that the "scope of the agency relationship" between employees of these subsidiaries is "unknown," creating a factual issue inappropriate for a motion to dismiss).)

*Reinsurance Co.*, No. 21 CV 3523, 2021 WL 5769528, at *5 (N.D. Ill. Dec. 6, 2021) (applying conditional privilege because an entity cannot interfere with its own contract, and this extends to agents of the contracting party). The conditional privilege also applies to lawyers, based on their fiduciary duty to their clients. *Schott v. Glover*, 109 Ill. App. 3d 230, 234–35, 440 N.E.2d 376, 379–80 (1st Dist. 1982).

There is no genuine dispute that Hahn and Block, as Selective's lawyers, were acting as its agents. (*See* Pl.'s Reps. to Hahn's MTD [63] at 10 ("That Hahn and Block were ostensibly both agents of Selective does not preclude CSI's conspiracy claim.").) And as previously discussed, the complaint confirms that they and Cherrie indeed were Selective's agents with respect to the CSI matter. They therefore owed Selective a duty to exercise business judgment and/or a fiduciary duty when handling CSI's claim and litigation—the very conduct underlying the tortious interference claim. That conduct is, thus, shielded by the conditional privilege, unless their conduct falls into an exception. With this threshold issue resolved, the court turns to the merits of CSI's tortious interference claim.

## B.     Allegedly Unjustified Conduct

### 1.     Denial of Insurance

In this round of briefing, CSI claims that Defendants had a "personal stake in keeping Selective from discovering facts to preserve [their] employment." (Pl.'s Resp. to Cherrie's MTD. [15] at 5; Pl.'s Resp. to Hahn's MTD [63] at 7; *see* Pl.'s Resp. to Block's MTD [64] at 8–9.) Though CSI is less than helpful in identifying the facts that Defendants sought to keep hidden, its theory appears to (once again) rest on Hahn's alleged conflict in adjusting and litigating CSI's claim. CSI speculates that Hahn wanted to conceal from Selective his wrongful actions in denying CSI's claim and instituting the attendant litigation. According to CSI, Hahn prolonged litigation and withheld payments in order to bankrupt CSI, so that CSI would stop challenging those wrongful actions. Block and Cherrie—in some less than clear way—participated in this plan, as well.

This speculative and attenuated theory cannot explain the initial denial of insurance. Cherrie had nothing to do with the denial, as he did not become Hahn's supervisor until two years after that denial occurred. Block also had a limited role; CSI merely asserts, with no details, that Block "knew" Hahn's reason for denying coverage was "wrong because it omitted pertinent facts." (FAC ¶ 23.) The denial also predated any alleged "wrongful actions" by Hahn. Besides this implausible employment preservation theory, CSI has failed to identify any self-interested motivation that Hahn had for the denial or that Block had in approving the denial. Instead, CSI just points to the context of the denial: Hahn conducted his own "personal investigation" via Google and determined that CSI was a "law violator[]"—thus allowing Hahn to invoke the coverage exclusion for knowing legal violations. (FAC ¶¶ 20, 38.) But whether or not Hahn voiced a "half-truth" when recommending the denial to Selective, CSI points to no facts suggesting that Hahn did not truly believe the policy exclusion would apply or was motivated by anything besides a desire to reduce Selective's coverage liability.[18]

This distinguishes *Stewart v. Ost*, 142 Ill. App. 3d 373, 374–75, 491 N.E.2d 1306, 1307–08 (1st Dist. 1986), where the defendant (a security representative) knowingly lied to his company by saying that plaintiff (another employee) had used a stolen credit card. In *Stewart*, there were no allegations that defendant's knowing misrepresentation in any way furthered his company's interests. In contrast, CSI's own complaint shows that Hahn believed CSI was guilty of knowing infringement and he could reduce Selective's liability, even if it involved a "half-truth."

---

[18]    Although CSI omitted this background on Hahn's pre-denial investigation in its original complaint, the court considered this context, as well as Judge Kocoras's other findings about Hahn's denial, in its prior dismissal order. *Hahn*, 2020 WL 4815905, at *3 & n.7. As the court explained, though Judge Kocoras's findings appeared "damning," he did not find that Defendants acted "solely for their personal interests"—just that Hahn was, for "whatever reason," hell bent on denying coverage. *Id.* at *6. Nor did CSI "allege that Judge Kocoras found that Defendants engaged in conduct that was 'totally unrelated' or 'antagonistic' to Selective's interests." *Id.* (quoting *HPI Health Care*, 131 Ill. 2d at 156, 545 N.E.2d at 677). Regarding Hahn's "half-truth" to his superior, the court explained that Judge Kocoras's opinion did not find "that this conduct was an 'illegal means to induce' Selective to breach the insurance policy." *Id.* (quoting *HPI Health Care*, 131 Ill. 2d at 159, 545 N.E.2d at 678). CSI has offered no new allegations or caselaw changing this conclusion.

## 2.    Illinois Action and Withholding Payments

Next, CSI claims that Defendants interfered with the insurance contract by using the Illinois state court litigation to withhold payment under the contract and by otherwise withholding payment as the Illinois action was pending.

These assertions of tortious interference are an odd fit in the context alleged here.  CSI phrases many of its allegations in terms of Defendants' taking direct action against CSI, rather than recommending that Selective take action against CSI.  For example, CSI alleges that Hahn and/or Block themselves filed the Illinois declaratory judgment action and court documents (*see, e.g.*, FAC ¶ 56), did not respond to CSI's invoices (*see, e.g.*, *id.* ¶ 46), and "continued to withhold payment from CSI" (*id.* ¶ 63).  "Under Illinois law, liability for tortious interference may only be premised on acts immediately directed at a third party which cause that party to breach its contract with the plaintiff."  *George A. Fuller Co. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d 1326, 1331 (7th Cir. 1983).  Direct acts by Defendants toward CSI do not constitute tortious interference. Rather, allegations that Selective sued and failed to pay CSI are allegations of breach of contract on the part of Selective, carried out by Defendants acting as Selective's agents.  CSI faces another problem with its allegations about the Illinois litigation:  it cannot base tort liability on the filing of a lawsuit, even a "factually and legally flawed" one.  (FAC ¶ 42 (quoting Federal Findings at 11)); *see Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) ("[T]he only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process."); *see also Pittsfield Dev., LLC v. Lynd*, No. 19-CV-01321, 2020 WL 6701104, at *7 (N.D. Ill. Nov. 13, 2020) (collecting cases applying the *Havoco* principle to tortious interference claims).  This precludes liability for Block's and Hahn's decision to file the Illinois action.

Putting aside these problems, CSI still has not alleged tortious interference based on Defendants' conduct in the Illinois action.  As best this court can tell, CSI contends that Hahn instituted and prolonged the lawsuit—which was filed ten days after he denied insurance coverage and *before* Block denied reconsideration—to cover up his actions in that denial.  Block—for some

reason that CSI does not identify besides "essentially" being Hahn's lawyer (FAC ¶ 148)—allegedly also sought to cover up Hahn's denial through litigation.  But protracted litigation about Selective's decision to deny coverage would bring to light, not hide, Hahn's and Block's role in that denial.  Perhaps realizing this, CSI offers another story:  Hahn and Block wanted to bankrupt CSI by litigating the lawsuits *and* withholding payments, all so CSI could not afford to continue challenging Defendants' conduct—that is, the denial of insurance.

The problem with this theory is, again, that Defendants' actions are consistent with Selective's interests.  Defendants are alleged to have unduly prolonged the litigation in an effort to deprive CSI of recovery and eventually bankrupt CSI, thus requiring CSI to give up the effort to seek a favorable judgment.  To the extent this furthered Defendants' interest in excusing the wrongful denial of insurance, Selective shared their interest.  CSI offers no specifics on how Defendants' desire to hide the wrongfulness of the denial and their role in that denial differed from Selective's desires.  Nor do they identify any specific situations where Defendants harmed Selective because of their supposedly divergent interests.  For example, CSI asserts that Hahn and Block failed to keep their supervisors informed about the litigation and scuttled settlement negotiations to "propagate" the Illinois action so they could "avoid having to inform Selective's management of the true nature and results of their actions" (FAC ¶ 130)—presumably because CSI would become bankrupt before their actions came to light.  But CSI has provided no details on any settlement offers or on what information Defendants concealed from Selective.  The court is unable to infer that Defendants' failure to accept, relay, or inform Selective about a settlement offer was contrary to Selective's interest.  In any event, settling with CSI would have hidden the Defendants' alleged misconduct more easily than CSI's convoluted coverup theory.[19]

---

[19]     CSI also contends that (at least after the Section 155 bench trial), Hahn "illegally pressure[ed] CSI to settle so the facts about his initial wrongful denial, based on a deceitful half-truth, were not exposed."  (Pl.'s Hahn Resp. at 7.)  CSI offers no allegations to support this alleged "illegal pressure" to settle.  And exerting pressure to settle would be inconsistent with CSI's theory that Defendants wanted to delay resolution of the litigation in order to force CSI into bankruptcy.

CSI's employment-preservation theory completely fails for Cherrie, who was not involved in the coverage denial or the decision to institute the Illinois action. The primary allegation against Cherrie—that he instructed Hahn not to pay CSI in January 2015 due to the pending appeal and federal lawsuit—simply confirms that Cherrie sought to prevent Selective from paying an unsettled financial liability. CSI's suggestion that Hahn and Block acted inappropriately in covering up this email (*see* CC ¶¶ 71–75) says nothing about Cherrie's liability. The remaining allegations relate to Cherrie's litigation conduct, and are primarily aimed at the federal action (discussed in more detail below). CSI again sheds no light on how this litigation conduct misaligned with Selective's interests. Also unpersuasive is CSI's contention that Hahn's and Block's conduct should be "imputed" to Cherrie. (*Id.* at 4.) Instead, the conduct of all three Defendants—Hahn, Block, and Cherrie—is properly imputed to Selective, on whose behalf all three were acting. CSI's labored attempt to get around this conclusion, by pointing to Cherrie's LinkedIn profile, which includes complying with "applicable legal and regulatory requirements" in his job duties, is similarly meritless. (Ex. B to Pl.'s Resp. to Cherrie's MTD [15-2].)

Nor does CSI's litany of supposed wrongs in the Illinois action—Hahn's and Block's alleged conflict in defending themselves, Hahn's improper handling of discovery, and all Defendants' failure to keep Selective informed about the litigation and settlement negotiations—support liability.[20] First, Selective breached the contract in this case by failing to provide a defense in the Oregon action and refusing to reimburse CSI's defense costs. CSI does not explain how Defendants' subsequent litigation conduct could have caused Selective to deny coverage or reimbursement in the first place; in short, CSI has failed to plead the required element of causation. *See Webb*, 906 F.3d at 577. Second, assuming Defendants' misconduct somehow caused Selective's breach, CSI has not adequately alleged that it was "unjustified" in the sense that it was inconsistent with Selective's interests. CSI asserts but does not explain how any of

---

[20] In addition to these reasons, Block's and Hahn's actions in litigating this lawsuit are covered by the absolute attorney litigation privilege, as the court explains in the next Part.

this conduct was aimed at "preserving [Hahn's] employment" or otherwise motivated by Hahn's purported conflict of interest. (FAC ¶ 139.) CSI's references to rules of professional responsibility, and its vague allegations that Hahn could not "be impartial" or "adequately represent" Selective (*id*. ¶¶ 138, 140), also do not bolster CSI's conflict of interest theory concerning Hahn. Even less so has CSI made a case against Block, about whom CSI offers even fewer factual details. (*See id*. ¶ 148.)

Because CSI has once again failed to point to any motivation for Defendants' conduct besides a desire to reduce Selective's insurance liability, its cited cases are distinguishable. For instance, in *Mittelman v. Witous*, 135 Ill. 2d 220, 250, 552 N.E.2d 973, 987 (1989), a law firm president and associate both made mistakes in handling certain cases; after the firm discovered the mistakes, the defendant-president falsely blamed the plaintiff-associate, allegedly interfering with his employment. The court concluded these allegations overcame the conditional privilege as the president "had a personal stake in the matter—preservation of his own reputation—which may very well have conflicted with the best interests of the firm," and so providing false information to the firm was against its interests. *Id*. In contrast, CSI offers no basis for its assumption that Hahn's "half-truth" in recommending coverage denial stemmed from anything other than his personal belief that he could reduce Selective's exposure. CSI has not plausibly alleged that his subsequent actions constituted some coverup that Hahn undertook to preserve his reputation.

CSI also points to *North Shore Med. Ctr., Ltd. v. Evanston Hosp. Corp.*, No. 92 C 6533, 1996 WL 435192 (N.D. Ill. July 31, 1996), to argue that malice may be inferred where defendants have no justification for their interfering action. This older, unreported decision is not binding and, in any case, distinguishable: The defendant corporate officers there purported to protect their corporation's interest in "leasing the exact amount of space it needed" by reneging on a leasing agreement for 20,000 square feet and instead taking just 10,000 square feet, rather than the 20,000 square feet that the corporation actually needed. *Id*. at *2. The court concluded that "it can be inferred that [Defendants] were acting purely out of a desire to harm plaintiffs," because

their actions were "unrelated to [the hospital's] actual leasing needs." *Id.* This conclusion was bolstered by the fact that defendants took another action that harmed plaintiff—attempting to keep an x-ray laboratory in the hospital building, an action inconsistent with the interests of the hospital, which had been under pressure from city regulators to *not* take this type of action. *See id.* Unlike in *North Shore*, Defendants' actions furthered Selective's interest in avoiding coverage liability; the court cannot infer that they acted solely to harm CSI.[21]

### 3. Federal Action and Other Alleged Harm to Selective

CSI's remaining allegations primarily relate to its claim that Defendants harmed Selective in the federal action—first, in the same way that Defendants' misconduct in the state court litigation allegedly harmed Selective. In addition to those allegations (which fail for reasons already discussed), CSI alleges that in the Section 155 federal bench trial, Hahn and Cherrie appointed themselves witnesses and gave unidentified testimony that left Selective "exposed to potential further liability." (FAC ¶¶ 122–23; CC ¶¶ 128–29.) These allegations do little to bolster CSI's case, first because under Illinois law, a witness's testimony at trial cannot give rise to tort

---

[21] CSI points to numerous other district and state court cases that are similarly unhelpful. In many cases, the allegedly interfering defendants had an identified self-interested reason for the interference. *See MillerCoors LLC v. HCL Techs. Ltd.*, No. 17 C 1955, 2017 WL 4390369, at *2–3 (N.D. Ill. Oct. 3, 2017) (defendant "was motivated by its need to justify its acquisition of [the contracting entity] to its shareholders"); *MS Produce, Inc. v. Burger King Corp.*, No. 02C8372, 2003 WL 21087883, at *6 (N.D. Ill. May 12, 2003) (defendants wanted "to eliminate competitors in the produce market for Burger King restaurants in the Midwest"); *see also Szczesny v. Vill. of River Forest*, No. 20 CV 5661, 2021 WL 2311972, at *1–2, 8 (N.D. Ill. June 7, 2021) (plaintiff sent the defendant-police chief a union complaint letter, after which the chief made a series of false statements about him); *Sharma v. Bd. of Trustees of Univ. of Ill.*, 404 F. Supp. 3d 1183, 1204 (N.D. Ill. 2019) (defendants were angry that plaintiff had embarrassed one by reporting a debt issue and had repeatedly refused to authorize the other's expenses).

CSI also cites several cases concerning the qualified privilege for allegedly defamatory communications, which can be overcome if the defendant displayed a reckless disregard as to the statement's truth. *See Act II Jewelry*, 2016 WL 4011233, at *6 (complaint alleged that defendants knew the statements were false); *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 126 F. Supp. 2d 1130, 1136–37 (N.D. Ill. 1999) (same); *Tamburo v. Dworkin*, No. 04 C 3317, 2010 WL 5476780, at *4–5 (N.D. Ill. Dec. 29, 2010) (complaint alleged that defendants recklessly disregarded whether the statements were true). This principle does not have any obvious application in this case; CSI does not allege that Defendants made defamatory statements about CSI.

liability. *See MacGregor v. Rutberg*, 478 F.3d 790, 791 (7th Cir. 2007) (explaining that Illinois "recognizes an absolute privilege for statements in testimony or pleadings in a judicial proceeding," which cannot be "the basis of a suit against [the witness]," except for certain criminal prosecutions). Second, CSI has not alleged causation. Selective's breach of the insurance policy ended when it paid damages for its failure to defend CSI, as ordered by the Illinois court in October 2017. The Section 155 bench trial in the federal action did not occur until July 2018. It is not clear how Defendants could have caused a breach that had happened years earlier.

CSI also presents a chart citing various complaint allegations and claiming the alleged conduct violated Title 50 of the Illinois Administrative Code and Section 154 of the Illinois Insurance Code. (*Id.* ¶ 177 (citing 215 ILCS 5/154.6, Ill. Admin Code Title 50, § 919.50, 80).) But for reasons explained, the conduct identified in the chart was consistent with Selective's interests. Characterizing this conduct as alleged regulatory violations does not alter the court's conclusion, especially as both codes cited by CSI are meant to regulate the insurance industry in general, not impose individual liability on agents of insurance companies. *Area Erectors, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2012 IL App (1st) 111764, ¶ 30, 981 N.E.2d 1120, 1127 (Section 154.6 is "regulatory in nature" and does not give rise to a private remedy); *Weis v. State Farm Mut. Auto. Ins. Co.*, 333 Ill. App. 3d 402, 406, 776 N.E.2d 309, 311 (2nd Dist. 2002) (same for Title 50). No matter how CSI presents the factual allegations, they do not plausibly support an assertion that Defendants engaged in "illegal means to induce" Selective to breach the insurance policy, in furtherance of their own interests. *See HPI Health Care*, 131 Ill. 2d at 159, 545 N.E.2d at 678.

Without any factual specifics, CSI is left with conclusory statements about Defendants' intent. Absent any other alleged basis that Defendants acted for personal reasons or purely to harm CSI—for example, allegations of a preexisting relationship, specific animus, or plausible personal interest—the allegations are insufficient to state a claim of interference. CSI's allegations that Defendants' actions were "contrary" to Selective's unidentified interests and decreased its "shareholders' value" (FAC ¶¶ 158, 161; CC ¶¶ 164, 167) are also insufficient. CSI

further notes (without details) that Selective terminated Hahn in April 2019, allegedly for his handling of CSI's claim and litigation. (FAC ¶ 166.) But the wrongdoing CSI charges Hahn with here all took place years earlier, and there is no indication that Selective's litigation posture has changed. Even if CSI is correct that Selective is no longer satisfied with Hahn's performance, there is no basis for concluding that his conduct was inconsistent with Selective's interests for the seven years during which the conduct took place.

The court concludes that CSI has failed to state a claim for intentional interference with contract against Defendants. The derivative torts of civil conspiracy and aiding and abetting fail as well. *See Chadha v. N. Park Elementary Sch. Ass'n*, 2018 IL App (1st) 171958, ¶ 58, 123 N.E.3d 519, 538.

## III.     Absolute Attorney Litigation Privilege

CSI's lawsuit against Hahn and Block fails for one additional reason: their conduct is absolutely protected by the attorney litigation privilege.[22] This privilege "affords an attorney complete immunity with respect to the communications he makes . . . . regardless of the attorney's motives in making that communication and irrespective of the attorney's knowledge of the falsity of it or the unreasonableness of his conduct." *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶ 18, 117 N.E.3d 238, 245. The privilege is grounded in public policy principles, particularly the need to provide attorneys with "the utmost freedom in their efforts to secure justice for their clients." *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 24, 36 N.E.3d 999, 1008 (quoting *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 701–02, 742 N.E.2d 425, 438 (1st Dist. 2000)). The privilege protects communications made before, during, and after litigation, *see id.* ¶ 26, 36 N.E.3d at 1008, so long as they "pertain to proposed or pending litigation." *Scarpelli*, 2018 IL App

---

[22]     Block raised the absolute attorney litigation privilege. CSI makes no specific argument about its application to Hahn. The court sees no reason why the privilege would not apply to Hahn, at least where he allegedly litigated the underlying insurance claim (rather than just adjusted it) and acted as Selective's attorney in varying lawsuits. There are no allegations that Cherrie is an attorney, and Defendants make no argument the privilege applies to him.

(1st) 170874, ¶ 19, 117 N.E.3d at 246.  Historically, the privilege was limited to defamation claims based on attorney communications, but in recent years, Illinois courts have extended it to "conduct . . . performed in the practice of law" and a variety of non-defamation torts.  *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 27, 36 N.E.3d at 1009 (intentional infliction of emotional distress and strict liability); *see also Kim v. State Farm Mut. Auto. Ins. Co.*, 2021 IL App (1st) 200135, ¶¶ 36, 38, ___ N.E.3d ___ (common law and statutory fraud); *Scarpelli*, 2018 IL App (1st) 170874, ¶ 9–13, 117 N.E.3d at 243–44 (intrusion upon seclusion); *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶¶ 9–14, 7 N.E.3d 52, 55–56 (invasion of privacy, negligence, negligent infliction of emotional distress, and breach of contract).

Though no Illinois court has specifically held that the absolute litigation privilege applies to interference with contract claims, *see GC Am. Inc. v. Hood*, No. 20-CV-03045, 2022 WL 910556, at *6–7 (N.D. Ill. Mar. 29, 2022), the court concludes that Illinois's policy of protecting zealous advocacy supports application of the privilege in this case.  Defendant attorneys allegedly interfered with their client's contract with the plaintiff through litigation (or litigation-related conduct and communications) about that contract.  Claims arising out of such contract are barred by the absolute litigation privilege.  This includes Hahn's and Block's letters denying coverage, *see Atkinson v. Affronti*, 369 Ill. App. 3d 828, 833, 861 N.E.2d 251, 256 (1st Dist. 2006) (privilege protected counsel's letter to a "potential litigant"), and their allegedly wrongful conduct in the Illinois and federal actions, *see O'Callaghan*, 2015 IL App (1st) 142152, ¶ 29, 36 N.E.3d at 1009 (privilege protected a litany of litigation misconduct, including violating discovery and evidentiary rules, contriving a "bad-faith defense," failing "to properly participate in settlement and mediation," and lying to the client).  The privilege also extends to their alleged refusal to reimburse CSI for the costs of its defense in the Oregon action, since this occurred in connection with their decision to litigate and appeal the declaratory judgment determining the scope of Selective's duty to defend.

CSI's primary argument in response—that the privilege does not apply to intentional torts—is incorrect. The attorney litigation privilege is, by its terms, absolute. It applies no matter the attorney's motives or the reasonableness of his conduct. *Scarpelli*, 2018 IL App (1st) 170874, ¶ 31, 117 N.E.3d at 251. CSI's cited cases are inapposite, as they rely on the malice exception to the previously-discussed conditional privilege against tortious interference. *See, e.g.*, *Schott*, 109 Ill. App. 3d at 234–35, 440 N.E.2d at 379–80 (1982) (applying conditional privilege because attorneys owe a fiduciary duty to their clients).[23] CSI's broad contention that the privilege does not apply where the attorney has a conflict of interest is also misplaced. True, some caselaw suggests that the privilege may not apply where the attorney acted contrary to his client's interest. *See Scarpelli*, 2018 IL App (1st) 170874, ¶ 27, 117 N.E.3d at 249 (noting that the client's continued retention of counsel "rebuts any suggestion that [counsel] was not acting in furtherance of her interest, regardless of whether its acts were entirely proper"). But for all the reasons already discussed, even if this carveout exists, it would not apply here.

## IV.    Dismissal with Prejudice

The court dismisses CSI's complaints against Defendants Hahn, Block, and Cherrie with prejudice. Under Federal Rule of Civil Procedure 15, courts have "broad discretion" to dismiss with prejudice "where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile."

---

[23]    CSI's cited cases either do not consider recent changes in Illinois caselaw, *see Act II Jewelry, LLC v. Wooten*, No. 15 C 6950, 2016 WL 4011233, at *6 (N.D. Ill. July 27, 2016), or do not consider the absolute attorney litigation privilege whatsoever. *See Wahlert v. Kovitz Shifrin Nesbit*, No. 17 C 8055, 2019 WL 480010, at *4 (N.D. Ill. Feb. 7, 2019); *Cotton v. Priv. Bank & Tr. Co.*, No. 01 C 1099, 2004 WL 526739, at *5 (N.D. Ill. Mar. 12, 2004); *see also Marc Dev., Inc. v. Wolin*, 904 F. Supp. 777, 784 (N.D. Ill. 1995) (purporting to apply the attorney litigation privilege, but relying on cases applying the conditional privilege). CSI's cases considering derivative torts are also inapposite, as both were cases where an attorney allegedly aided and abetted his client's fraud. *See Fifth Third Mortg. Co. v. Kaufman*, 934 F.3d 585, 587–89 (7th Cir. 2019) (rejecting attorney's waived argument that "a lawyer cannot aid and abet a client's fraud as a matter of law," where he participated in a mortgage fraud scheme); *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 26–28, 799 N.E.2d 756, 766–68 (1st Dist. 2003) (explaining that counsel was allegedly "involved . . . in the acts underlying [the] fraud").

*Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008); *see Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) (Rule 15 "govern[s] a court's decision to dismiss a complaint with prejudice"). "Ordinarily, however, a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).

Regarding the First Amended Complaint against Block and Hahn, the absolute attorney litigation privilege renders further amendment futile. *See O'Callaghan*, 2015 IL App (1st) 142152, ¶ 33, 36 N.E.3d at 1010. Additionally, the court has already given CSI the chance to amend its allegations, and CSI failed to cure the deficiencies identified in the original complaint. Though CSI's Complaint against Cherrie is technically its "original" complaint against him, the allegations are substantively identical to and arise from the same events as CSI's allegations against Hahn and Block.

## CONCLUSION

Defendants Hahn's [61] and Block's [60] motions to dismiss the First Amended Complaint in Case No. 19 C 6063 are granted. Defendant Cherrie's motion [14] to dismiss the Complaint in Case No. 21 C 529 is granted as well. The dismissals are with prejudice.

ENTER:

Date: June 24, 2022

REBECCA R. PALLMEYER
United States District Judge